PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| KENNETH TAYLOR o/b/o, AARON C. TAYLOR, | ) ) ) | CASE NO.  1:08-CV-02652 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | MAGISTRATE JUDGE BENITA Y. PEARSON |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| Defendant. | ) ) | **MEMORANDUM OF OPINION AND ORDER** |

This is an action for judicial review of the final decision of the Commissioner of the Social Security Administration denying Supplemental Security Income, pursuant to 42 U.S.C. § 405(g), to Plaintiff Kenneth Taylor, uncle and legal guardian, on behalf of his nephew Aaron C. Taylor.  The parties have consented to the jurisdiction of the undersigned Magistrate Judge.

Having found that the Agency's denial of benefits is not supported by substantial evidence, not based on proper legal standards, and that substantial evidence exists that Aaron Taylor's combination of impairments functionally equals a listing because he has marked limitations in at least two domains of functioning, the Court remands this matter to the Commissioner of the Social Security Administration for an immediate award of benefits.

(1:08-CV-02652)

## I.  Overview

Aaron C. Taylor ("Aaron") was 11 years old when his uncle and legal guardian, Kenneth

Taylor ("Mr. Taylor") applied for Supplemental Security Income ("SSI") benefits on Aaron's

behalf; he was 15 years old when the final Agency decision was issued.  At all relevant times,

Aaron was an adolescent who had not engaged in any substantial gainful activity prior to the

Administrative Law Judge's ("ALJ") decision.  (Tr. 25.)  There is no dispute that Aaron suffers

from multiple mental disorders that manifest in severe behavioral problems.  As the grounds for

his SSI application, Aaron alleged behavioral problems and headaches.  (Tr. 49.)

The ALJ found that although Aaron suffers from the following severe impairments:

"attention deficit hyperactivity disorder [ADHD], conduct disorder, depression, and rule/out post

traumatic stress disorder [PTSD] (Exhibits 1F-18F)(20 C.F.R. 416.924(c))," he does not have an

impairment or combination of impairments that meets, medically equals or functionally equals a

listed impairment.  (Tr. 25.)

As explained in greater detail below, if an impairment does not meet or *medically* equal a

listed impairment, then the ALJ may find disability if the child's impairment is *functionally*

equivalent to a listed impairment.  To make this determination, the ALJ evaluates six areas or

"domains" of development or functioning.  To establish disability, the child minimally must have

"marked" limitations in at least two of six domains or an "extreme" limitation in one domain.[1]  In

---

[1]  The range of limitation findings for a domain are: "no limitation," "less than marked," "marked," and "extreme."  *See generally* 20 C.F.R. § 416.926a.  A finding of "less than marked" is used to describe a limitation thought to be not significant enough to support a finding of disabled, either individually or in combination with other findings.

-2-

(1:08-CV-02652)

this case, the ALJ found that Aaron had no "marked" or "extreme" limitation in any of the six

domains.  (Tr. 27-32.)  Aaron, through counsel, argues that the ALJ's findings are incorrect and

that he has a "marked" limitation in three of the six domains, specifically the domains of 1)

attending and completing tasks, 2) interacting and relating with others, and 3) caring for himself.

ECF No. 15 at 2.  Accordingly, the crux of the matter before the Court is whether substantial

evidence exists to support the ALJ's findings that Aaron did not show at least marked limitations

in two of these three domains or an extreme limitation in one of the three domains.[2]

     After reviewing the administrative record as a whole, including the medical records,

other evidence presented, all relevant testimony, and the legal standards applied, the Court finds

that the ALJ did not reach a decision supported by substantial evidence or based upon proper

legal standards, including Agency regulations.  Because the record supports findings that Aaron

has marked limitations in at least two of the disputed domains, the Court reverses the decision of

the Commissioner of Social Security and remands the matter for an immediate award of benefits,

pursuant to Sentence Four of 42 U.S.C. § 405(g).

## II.  Procedural History

     Aaron filed an application for Supplemental Security Income benefits on January 25,

2005, alleging a disability due to behavioral problems and headaches.  The Agency initially

denied Aaron's claim on May 19, 2005 and again upon reconsideration on September 22, 2005.

On October 17, 2005, Aaron filed a request for an administrative hearing before the ALJ which

---

[2] Given that neither party contests the ALJ's findings regarding the remaining three
domains, the Court primarily focuses its attention on the three disputed domains.

(1:08-CV-02652)

was held on March 19, 2008, *via* video conferencing technology.  Aaron, his counsel and his

uncle attended the hearing.  The ALJ issued a decision denying benefits on April 11, 2008,

indicating that the denial was based on Aaron's lack of an impairment or combination of

impairments that meets, medically equals, or functionally equals a Listing.  (Tr. 25.)  Aaron filed

a request for a review of the ALJ's decision which the Appeals Council denied on September 19,

2008.  Because the Appeals Council denied Aaron's request for review, the ALJ's decision dated

April 11, 2008, became the final decision of the Agency.  Seeking judicial review of the

Agency's final decision denying him benefits, Aaron timely filed a Complaint asserting the

following issues:

> 1.  The ALJ's decision violates the long-standing treating physician rule because it ignores the well-documented opinions of Aaron's treating physicians and school psychologist that should be accorded controlling authority.

> 2.  The ALJ did not properly explain his reasons for discounting the opinions of Aaron's school psychologist and teachers regarding his *marked* functional limitations when *attending and completing tasks, interacting and relating to others,* and *caring for himself*.

> 3.  Contrary to Soc. Sec. Rul. 96-7p, the ALJ did not properly explain his reasons for discounting Kenneth Taylor's and Aaron Taylor's credibility.

ECF No. 15 at 2.

### III.  Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining

whether there is substantial evidence to support the denial decision and whether the ALJ properly

applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681

(6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence

(1:08-CV-02652)

is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health*

*& Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  Under 42 U.S.C. § 405(g), the findings of the

ALJ are conclusive if they are supported by substantial evidence.

       The substantial evidence standard presupposes that there is a "zone of choice" within

which the Agency may proceed without interference from the courts.  *Mullen*, 800 F.2d 535, 545

(6th Cir. 1986) (*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)).  The ALJ's

decision must be affirmed if it is supported by substantial evidence even if the reviewing court

would have decided the matter differently, and even if substantial evidence also supports a

different conclusion.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999);

*Mullen*, 800 F.2d at 545.  "Even if supported by substantial evidence, however, a decision of the

Commissioner will not be upheld where the [Social Security Administration] fails to follow its

own regulations and where that error prejudices a claimant on the merits or deprives the claimant

of a substantial right."  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

       In determining the existence of substantial evidence, the reviewing court must examine

the administrative record as a whole.  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536

(6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001).  The district

court may look into any evidence in the record, regardless of whether it has been cited by the

ALJ.  *Mullen*, 800 F.2d at 545.  The reviewing court, however, may not try the case *de novo*,

resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard*, 889 F.2d at

681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

(1:08-CV-02652)

## IV.  Determination of Disability in a Minor

An individual under the age of 18 will be considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382(c)(3)(i); 20 C.F.R. §§ 416.906, 416.911(b). The regulations prescribe a three-step sequential evaluation process. *See* 20 C.F.R. § 416.924(a). At Step One, a child will be found "not disabled" if he is engaging in substantial gainful activity. *See* 20 C.F.R. § 416.924(b). At Step Two, a child will be found "not disabled" if he does not have an impairment or combination of impairments that is severe, *i.e.*, impairments that cause no more than minimal functional limitations. *See* 20 C.F.R. § 416.924(c). At Step Three, a child will be found "disabled" if he has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. § 416.924(d).

If a child does not meet or *medically* equal a Listing, in order to determine whether a child's impairment(s) *functionally* equals a Listing at Step Three, the ALJ must assess the functional limitations caused by the impairment(s) by considering how a child functions in the following six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

-6-

(1:08-CV-02652)

    5.  Caring for yourself; and

    6.  Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi); *see* also 20 C.F.R. § 416. 926a(a).  If a child's impairment(s) results in "marked" limitations in two domains or an "extreme" limitation in one domain and meets the duration requirements,[3] the impairment(s) functionally equals the listings and the child will be found disabled.  *See* 20 C.F.R. § 416. 926a(d).

    The ALJ ruled in favor of Aaron at Steps One and Two.  (Tr. 25.)  With regard to Step One, the ALJ determined that Aaron was a school-age child at the time of his application and an adolescent at the time of the hearing and had not engaged in substantial gainful activity.[4]  (Tr. 25.)  At Step Two, the ALJ determined that Aaron had the following severe impairments: attention deficit hyperactivity disorder ("ADHD"), conduct disorder, depression, and rule/out post traumatic stress disorder.  (Tr. 25.)  Neither party contested the ALJ's findings at Steps One and Two.  The dispute arose at Step Three.

    If an impairment does not "meet" a listed impairment, disability may nonetheless be established if the child's impairment is medically or *functionally* equivalent to a listed impairment.  Plaintiff concedes that he can establish medical equivalence.  Rather, Aaron's claim is that his disability is functionally equivalent to a listed disability.  Concomitantly, Aaron

---

    [3] "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."  20 C.F.R. § 416.909.

    [4] An individual under age 18 who is engaged in substantial gainful activity (*i.e.*, performing significant physical or mental activities for pay or profit) may not be considered disabled.

(1:08-CV-02652)

specifically seeks relief from the ALJ's findings (in Step Three) that he did not have an

impairment or combination of impairments causing a "marked" limitation "in at least three

domains." ECF No. 15 at 20.  A finding of an extreme limitation in at least one domain would

also establish a functional equivalent to a listed impairment.

> The Agency defines a marked and extreme limitation as follows:
>
> (2) Marked limitation.
>
> (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."  It is the equivalent of the functioning we would expect  to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.
>
> (3) Extreme limitation.
>
> (i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked."  "Extreme" limitation is the rating we give to the worst limitations.  However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. §§ 416.926a(e)(2)(i), (e)(3)(i).

> In the instant case, the ALJ found that Aaron did not demonstrate a marked or extreme

limitation in any domain.  Specifically, the ALJ found that Aaron had *a less than marked*

(1:08-CV-02652)

*limitation* in four of the domains and no limitation in the remaining two domains. Aaron argues

that the ALJ's findings are incorrect and that he has a "marked" limitation in the domains of 1)

attending and completing tasks, 2) interacting and relating with others, and 3) caring for himself.

ECF No. 15 at 2. And, Aaron also contends, the ALJ violated the treating physician rule and

erred in his credibility analysis. A review of the record confirms Aaron's contentions that the

ALJ's decision and findings of less than marked limitations in the domains of attending and

completing tasks and interacting and relating with others are not supported by substantial

evidence, as explained below.

## V.   Analysis

### A.   The ALJ's Evaluation of the Medical Opinion Evidence is not Supported by Substantial Evidence

Aaron argues that the ALJ violated the treating physician rule when he ignored the

opinions of Aaron's treating physicians and school psychologist and did not properly explain his

reasons for discounting the opinions of his treating physician and other acceptable sources. ECF

No. 15 at 13-20.

#### 1.   The Treating Physician Rule and its Application

It is axiomatic in Social Security law that the opinions of doctors identified as treating

physicians are given greater weight than that attributed to other medical care providers. *See*

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Allen v. Califano*, 613 F.2d

139, 145 (6th Cir.1980); *see also* SSR 96-2p; 20 C.F.R. § 404.1527(d)(2). That privileged status

exists "only if [those opinions] are supported by sufficient clinical findings and are consistent

with the evidence." *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir.1993). If the ALJ does not

-9-

(1:08-CV-02652)

give the treating physician's opinion controlling weight, then the ALJ must consider several other factors in determining how much weight is appropriate.  Those factors include: (1) the length, frequency, nature, and extent of the treatment relationship; (2) consistency of the physician's conclusions and the evidence to support them; and (3) the specialization of the treating physician. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  The rule also creates "a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Id.* (*citing* SSR 96-2p).

It is mandatory that the ALJ provide "good reasons" for discounting a treating physician's opinion with reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p; *See also Wilson*, 378 F.3d at 544.  The significance of this notice requirement is that it ensures a denied claimant receives fair process.  An ALJ's failure to follow this requirement of providing good reasons "for explaining precisely how those reasons affected the weight accorded the [physician's] opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (*citing Wilson*, 378 F.3d at 544).  It is against these standards that the Court evaluates the ALJ's conclusions regarding Aaron's medical opinion evidence.

### 2.  The ALJ Failed to Follow the Treating Physician Rule and Agency Regulations in Evaluating Aaron's Medical Source Evidence

Aaron identifies at least two treating sources in his brief: treating psychologist Lisa Lafave, PhD., M.B.A. and treating psychiatrist J. Kashani, M.D.  ECF No. 15 at 16-17.  The Commissioner agrees with Dr. Lafave's status as a treating psychologist, but does not mention or

-10-

(1:08-CV-02652)

dispute Dr. Kashani's status as a treating psychiatrist.  ECF No. 17 at 12.  The Commissioner

argues that Dr. Lafave's reports did not directly address Aaron's "functional ability in specific

domains."  ECF No. 17 at 12.  He argues that her reports represent only "clinical findings and

diagnosis" that deserve less weight than that of the State Agency psychologists.  ECF No. 17 at

12.  The Sixth Circuit instructs that a treating source's opinion deserves greater weight "only if

[those opinions] are supported by sufficient clinical findings and are consistent with the

evidence."  *Bogle*, 998 F.2d at 347-48) (emphasis added).  Dr. Lafave's opinions, as argued by

the Commissioner, deserve greater weight because they are supported by sufficient clinical

findings.

The extent of the ALJ's limited discussion of the medical opinion evidence is as follows:

"As for opinion evidence, consistent with the findings in this decision, weight was given to the

medical opinions on issues reserved to the Commissioner from acceptable medical sources (*e.g.*,

licensed physicians, licensed or certified psychologists, qualified speech-language pathologists,

etc.) as appropriate under SSR 06-3p."  (Tr. 26.)  The ALJ's "discussion" does not provide the

reviewer with any information regarding what opinion evidence the ALJ reviewed (treating

source or otherwise), or what weight the ALJ accorded the unidentified opinion evidence.  Even

though the ALJ mentioned "Claimant's psychologist" twice in his written opinion, the ALJ did

not identify this evidence as a treating source or state what weight, if any, he gave "Claimant's

psychologist."

The ALJ failed to identify what weight, if any, he afforded any medical source's opinion,

including the treating physician.  More critically, the ALJ's written opinion does not begin to

-11-

(1:08-CV-02652)

approach the outer realm of the procedural requirement that the ALJ must provide "good

reasons" for discounting a treating physician's opinion.  The "good reasons" must be

"sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave

to the treating source's medical opinion and the reasons for that weight."  SSR 96-2p; *See also*

*Wilson*, 378 F.3d at 544.  Because the ALJ did not provide reasons (good or otherwise), his

written opinion failed to comport with Agency regulations and Sixth Circuit law.  An ALJ's

failure to follow this requirement of providing good reasons "for explaining precisely how those

reasons affected the weight accorded the [physician's] opinions denotes a lack of substantial

evidence, even where the conclusion of the ALJ may be justified based upon the record."[5]

*Rogers*, 486 F.3d at 243 (*citing* *Wilson*, 378 F.3d at 544).

     The Court finds the ALJ's analysis of the medical opinion evidence is not supported by

substantial evidence or properly articulated in the ALJ's denial decision.  *See* *Bowen v. Comm'r*

*of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

     **B.  The ALJ did not Conduct a Proper Credibility Evaluation**

     Deference is given to an ALJ's credibility determinations, *Casey v. Sec'y of*

*Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993), nevertheless, the Agency's

regulations still require an ALJ to properly evaluate and articulate his credibility findings.  In

determining the credibility of a claimant's statements, the ALJ must include specific reasons

---

     [5]  The Commissioner's *post-hoc* justification that the ALJ's "agree[ment] with DDS" (the
State Agency reviewing psychologists) that Aaron has no impairments that functionally equal the
listings, and those State Agency psychologists had reviewed the treating physician, Dr. Lafave's
"clinical findings and diagnosis," does not suffice to excuse the ALJ's non-compliance with the
Agency's regulations to provide "good reasons."

(1:08-CV-02652)

"supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight."  SSR 96-7p; *see also Cross v. Comm'r of Soc. Sec., 373 F. Supp.2d 724, 733 (N.D. Ohio 2005).*  Social Security Regulation 96-7p further instructs that "[t]he finding on credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."

Lacking the same analytic detail as his analysis of medical opinion evidence, the ALJ fails to make clear to the reviewer the reasons for discrediting Aaron's or Mr. Taylor's credibility.  After finding the statements concerning Aaron's limiting effects of his impairments are not credible, the ALJ's entire credibility analysis follows:

> Statements from his uncle/guardian (Exhibit 14F/13) are inconsistent with reports/opinions from physicians, teachers, which indicate claimant has a higher level of functioning than alleged.  DDS noted claimant gets along with friends although he has some problems with peers and authority figures and has been violent and abusive in the past ((Exhibit 7F).
>
> Claimant's psychologist [2-2-05 – 3-29-05] reported that the claimant's uncle reported *improvement* in claimant's behavior (see Exhibit 4F).  Claimant had friends, no present problem with school attendance, played the trumpet at school and planned to play basketball.

(Tr. 26.)

It impossible to discern from the above passage which statements made by Mr. Taylor the ALJ finds not credible.  Page 13 of Exhibit 14F (Tr. 238-44) is the first page of a seven-page "Child and Adolescent Diagnostic Assessment" form signed by Dr. Lafave and her supervisor. The form lists Mr. Taylor, his wife Janet, and Aaron as sources of the information reflected in the

(1:08-CV-02652)

form.  The assessment also contains a "diagnostic formulation" that Dr. Lafave presumably

provided by the doctor.  (Tr. 244.)  The ALJ's ambiguous reference to "Exhibit 14F/13" does

little to guide any subsequent reviewer to the statements of Mr. Taylor that the ALJ found not

credible.  Similarly, the ALJ fails to specify which "reports/opinions" or physicians and teachers

to which he presumably compared the uncle's statements.

The record does reflect that Mr. Taylor reported some improvement to Dr. Lafave, (Tr.

157), the "improvements" occurred immediately upon Aaron beginning therapy and lasted only a

two-month period in 2005.  The Court is unpersuaded that this single statement (which is

supported by evidence in the record) justifies the ALJ's determination that the uncle presented

evidence inconsistent with the record or is otherwise not credible.  (Tr. 26, 157.)

The ALJ's limited credibility analysis does not comport with the Agency's regulations.

Specifically, it does not include specific reasons "supported by evidence in the case record, and

[is] [in]sufficiently specific to make clear to the individual and to any subsequent reviewers the

weight the adjudicator gave to the individual's statements and the reason for the weight."  SSR

96-7p.  In sum, the ALJ's credibility analysis is not based on proper legal standards or supported

by the evidence in the record.  *See  Bowen*, 478 F.3d at 746.

**C.  The ALJ's Findings that Certain of Aaron's Impairments do not Functionally
Equal a Listing are not Supported by Substantial Evidence**

Of the six domains listed above, Aaron argues that he has a marked limitation in three of

them: 1) attending and completing tasks, 2) interacting and relating to others, and 3) caring for

himself.  As stated above, the ALJ found no marked limitation in any domain and Aaron does not

oppose the ALJ's findings regarding the remaining three domains.  The Court, therefore,

-14-

(1:08-CV-02652)

primarily focuses only on the three domains in dispute.

## 1. The ALJ's Analysis, Generally

It bears repeating that if a child's impairment(s) results in "marked" limitations in two domains or an "extreme" limitation in one domain and meets the duration requirements, the impairment(s) functionally equals the listings and the child will be found disabled. *See* 20 C.F.R. § 416. 926a(d). The ALJ found that Aaron has a less than marked limitation in each of the three disputed domains. The ALJ appears to have relied mostly on the State Agency non-examining and reviewing psychologists in reaching his findings. (Tr. 25.) In his written opinion, the ALJ briefly analyzed and noted a specific reason for his finding relating to each domain as follows:

> 1) <u>Attending and completing tasks</u> - "The claimant has ongoing problems but not severe and has not always taken medication with absences noted."

> 2) <u>Interacting and relating with others</u> - "The issues seem intermittent mostly with the family probably due to a history of serious family dysfunction with poor relationships with guardian and some impulsive acting out at school, but he likes sports and the trumpet. Two teacher reports 'claimant is a *pleasure* to have in the class.'"

> 3) <u>Caring for yourself</u> - "The claimant does not always take his medication."

(Tr. 29 & 31.) In addition to the aforementioned specific reasons, the ALJ also stated as follows:

> The claimant has various diagnoses including ADHD (Exhibit 17F/10), conduct disorder, depression and rule out PTSD. The record shows that on February 28, 2008 he was brought to the hospital by police after an incident of aggression when aunt yelled and appears to have been discharged the next day. He reported suicidal ideation. Before that there was only outpatient treatment and he was given meds for ADHD and "anger". He has multiple family problems, his mother used crack cocaine and he has been in trouble as a youngster from lack of adequate parenting and now lives with his aunt and uncle. In school he has trouble with math and is impulsive, but capable. Teachers' ratings are not severe and he is not in special education. He has received alternative schooling (Exhibit 17F/1).

(1:08-CV-02652)

(Tr. 25.)  The above passages represent the extent of the ALJ's analysis concerning his functional equivalency findings.  The Court finds several of the ALJ's statements are either misleading, incomplete, or conclusory (discussed below).[6]  Ultimately, the Court finds this analysis and these reasons for finding a less than marked limitation are not based on substantial evidence.

### 2.  The Medical Record

Social Security Regulation 96-6p sets forth the policy by which the Commissioner must follow when evaluating findings of fact by State Agency medical and psychological consultants. The policy provides that "[T]he opinions of State agency medical . . . consultants . . . can be given weight only insofar as they are supported by evidence in the case record, considering . . . the supportability of the opinion in the evidence including any evidence received at the administrative law judge . . . level[] that was not before the State agency."  SSR 96-6p (emphasis added).

The ALJ relied, in large part, upon the opinions of State Agency reviewing psychologists for his functional equivalence findings.  The ALJ, findings of less than marked limitations in all three domains did not, however, follow either reviewing psychologists' opinion completely.  The ALJ's opinion followed Dr. Zwissler's opinion regarding the domains of attending and completing tasks and interacting with others and Dr. Waddell's opinion regarding the domains of interacting with others and caring for yourself.  The reviewing psychologists disagreed on the

---

[6]    The ALJ's written decision resembles a very general narrative with only one or two conclusory lines inserted about Aaron.  Absent the occasional reference to Aaron and citations to the record, the ALJ's text could be about any adolescent claimant.

(1:08-CV-02652)

level of limitation for attending a completing tasks and caring for yourself.[7]

Mel M. Zwissler, PhD., who submitted his opinion on May 17, 2005, made the following

relevant functional equivalence findings:

> 1) <u>Attending and completing tasks</u> - Less than marked - Teacher again notes problems. Psychologist notes that clmt is impulsive. Clmt has been diagnosed with ADHD in the past. He is not currently taking his prescribed meds.

> 2) <u>Interacting and relating with others</u> - Less than marked - He has some problems with peers at school. He gets along ok with friends. He has some problems with authority figures. Clmt has been violent and abusive in the past.

> 3) <u>Caring for yourself</u> - No limitation

(Tr. 165-66.) Dr. Zwissler did not provide any additional analysis.

John S. Waddell, PhD., who submitted his opinion on September 20, 2005, made the

following relevant functional equivalence findings:

> 1) <u>Attending and completing tasks</u> - Marked - Teacher describes clt as having hourly problems with listening and following directions and completing work independently. MHC notes indicate that while clt was on medication in the past for ADHD, he has not actually been taking them for about a year and was only now started on meds per 7/05 psych note. His recall was reduced at remembering only 3 of 5 objects after a delay. He was able to complete serial 3's.

> 2) <u>Interacting and relating with others</u> - Less than marked - Teacher describes problems with clt defying authority figures and being sarcastic and aggressive towards peers. Psych TS does report some improvement in clt's relationship with his aunt and uncle, who are his guardians. He is aware of social expectations and can interact normally with peers or in school setting when he is motivated to do so. PhD reports that clt does play the trumpet at school and was involved with the basketball

---

[7] Dr. Zwissler found less than marked and no limitation in the domains of attending and completing tasks and caring for yourself, respectively. Dr. Waddell found marked and less than marked limitations in the domains of attending and completing tasks and caring for yourself, respectively. *See also infra* Appendix 1, Table Summarizing Findings Supported by Substantial Evidence.

(1:08-CV-02652)

team. 2005 report card did include some comments that he could be pleasant in class and did tend to over socialize, so his behavior issues appear intermittent.

3) <u>Caring for yourself</u> - Less than marked - Psych TS describes clt as wanting to be "too independent". Both teacher and PhD identify clt's chief problem as not dealing well with frustration and he has been involved with an after school program where he was taught ways to deal positively with anger. Therapist reports an overall improvement in clt's behavior with consistent therapy. His hygiene is noted to be appropriate.

(Tr. 171-72.) Dr. Waddell noted the Murtis H. Taylor Multi-service Center as the source for his opinions. (Tr. 174.)

It is important to keep in mind that Aaron applied for disability benefits on January 25, 2005, nearly 3 years before the ALJ heard the case on March 19, 2008. When Dr. Zwissler submitted his opinion on May 17, 2005, he had less than five months of relevant medical evidence from which to base his opinion.[8] Dr. Waddell, who submitted his opinion on September 20, 2005, had approximately four additional months of relevant medical evidence from which to base his opinion. By the date of Aaron's hearing, the ALJ had an additional thirty months of medical evidence from which to consider and make his disability findings.

Upon examination of the entire record, the Court found evidence of five individual Global Assessment of Functioning ("GAF") scores[9] provided by five separate sources. Dr.

---

[8] The Court is aware of medical evidence in the record pertaining to Aaron's birth dated February and March, 1993. (Tr. 185-88.) The record also contains medical evidence covering the period form February 2000 to December 2004 that consists of approximately five doctors visits. Of note, on February 18, 2000, the examining physician conducted a brief developmental and mental assessment noting abnormal findings for self-help skills, social-emotional, and mental/cognitive skills. (Tr. 107-11.)

[9] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A person who scores in this range may have a flat

(1:08-CV-02652)

Lafave noted a GAF score of 50 on February 2, 2005; the only score available to Dr. Zwissler.

(Tr. 150.)  A psychiatric evaluation completed at the Murtis H. Taylor Multi-Services center on

July 13, 2005, noted a GAF score of 50; the second and final score available to Dr. Waddell.  (Tr.

229.)  The remaining GAF scores were not available to either State Agency reviewing

psychologist: GAF score of 42 noted by treating psychiatrist J. Kashani, M.D. on February 24,

2006 (Tr. 178.); GAF score of 51 noted by Jodie Beaver, LPCC on January 15, 2008 (Tr. 203.);

and lastly, GAF score of 35 noted on Laurelwood Hospital's Initial Psychiatric Admission

History form on February 29, 2008.  (Tr. 210.)

    The case is remarkable in that the ALJ's references to the medical evidence in his written

opinion to support his finding of less than marked are often either not accurate or conclusory.

For example, the ALJ determined that Aaron's problems in the domain of interacting and relating

with others "seem intermittent mostly with family."  (Tr. 29.)  The ALJ relied upon Dr.

Waddell's statement that "his behavior issues appear intermittent."  (Tr. 171.)  As noted above,

---

affect, occasional panic attacks, few friends, or conflicts with peers and co-workers.  *See
Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association,
4th ed. revised, 2000).

A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social,
occupational, or school functioning.  A person who scores in this range may have suicidal
ideation, severe obsessional rituals, no friends, and may be unable to keep a job.  *See Diagnostic
and Statistical Manual of Mental Disorders*, *supra*.

A GAF score between 31 and 40 indicates some impairment in reality testing or communication
or major impairment in several areas such as work or school, family relations, judgment,
thinking, or mood.  A person who scores in this range may have illogical or irrelevant speech,
and may avoid friends, neglect family, and be unable to work.  *See Diagnostic and Statistical
Manual of Mental Disorders*, *supra*.

-19-

(1:08-CV-02652)

Dr. Waddell's opinion is based on limited evidence.  The record shows that Aaron has had

persistent behavioral problems with *others* outside of his family, (Tr. 207), including peers and

teachers which resulted in suspensions and a final expulsion from school.  (Tr. 246 & 280.)  This

behavior undoubtedly disrupted Aaron's education and, presumably, that of the children around

him.

The ALJ's determination that the family problems were "probably" the result of "serious

family dysfunction" is both speculative and conclusory and made without evidentiary support.

(Tr. 29.)  The medical opinion evidence does not support that Aaron's problems are the result of

family dysfunction.  Rather, the evidence supports that his problems are related to his mental

impairments, such as his ADHD.  The ALJ noted that Aaron "likes sports and the trumpet."  (Tr.

29.)  Aaron's report card, however, shows a "D+" in music class and his teacher comments that

Aaron "has not learned fingering/positions" and that he "needs to seek extra help."  (Tr. 162.)

The ALJ also relied upon two teachers notes from one of Aaron's report cards that states Aaron

is a pleasure to have in class.  (Tr. 29.)  However, one of those teachers, Ms. Huckelbridge,

reported during the same period that Aaron had obvious and serious problems, daily and hourly,

directly related to the domain of interacting and relating with others.  *Compare* (Tr. 115 & 162.)

The ALJ misstated Aaron's reported suicide attempt as "an incident of aggression."  (Tr.

25.)  The ALJ more correctly should have characterized Aaron's suicide attempt as an act of

"inward aggression" and properly considered it in the analysis of the domain of "caring for

yourself."  *See Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 652-54 (8th Cir. 2004); *see also*

*infra* footnote 10.  The ALJ overstated Dr. Lafave's report that Mr. Taylor reported improvement

(1:08-CV-02652)

in Aaron's behavior.  (Tr. 25 & 26.)  This "improvement" referred to only two months in 2005

and is not representative of the entire record as shown above.  Further, the ALJ concluded,

without offering support, a finding that Aaron had been in "trouble as a youngster from lack of

adequate parenting."  (Tr. 25.)  The ALJ stated that Aaron has trouble with math but neglected to

consider his English class grade of "D" and his lack of improvement in American History class.

(Tr. 272-73.)  On the whole, these examples and the evidence cited above denote a lack of

substantial evidence supporting the ALJ's conclusions and strip the ALJ a "zone of choice"

within which the Agency may proceed protected from interference from the courts.  *Mullen*, 800

F.2d 535, 545 (6th Cir. 1986) (*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)).

### 3.  Conclusions Supported by the Record

Overall, the ALJ's conclusions fail to track the record and do not appreciate that for an

adolescent Aaron's age, interactions at home and school comprise nearly his entire life's

activities.  His aggressive, disruptive, self-injurious and otherwise inappropriate behavior in

those arena is more than a "slight abnormality or combination of slight abnormalities that cause

no more than minimal functional limitations."  20 C.F.R. § 416.924(c).

The ALJ's finding of less than marked in the domain of attending and completing tasks,

is not supported by substantial evidence.  State Agency reviewing physician Dr. Waddell found

Aaron to have a marked limitation in this domain.  Dr. Waddell had an additional four months of

medical evidence to consider than Dr. Zwissler had available.  The GAF scores noted above and

additional evidence in the record, *see e.g.*, (Tr. 272-74), do not support Dr. Zwissler's finding of

less than marked that the ALJ obviously relied upon when he made the same finding.  The ALJ's

(1:08-CV-02652)

reliance on Dr. Zwissler's opinion does not comport with SSR 96-6p as Dr. Zwissler's opinion "can be given weight only insofar as [the opinion is] supported by evidence in the case record." The Court finds that the ALJ committed error for relying on Dr. Zwissler's opinion because, when the entire record is considered, Dr. Zwissler's opinion is not supported by and contradicted by evidence in the record. The medical evidence in the record along with Dr. Waddell's opinion supports the finding of a marked limitation in the domain of attending and completing tasks.

Concerning the domain of interacting and relating with others, the Court finds the ALJ's finding of less than marked is not supported by substantial evidence. As stated above, Aaron's declining GAF scores, two school suspensions, expulsion for fighting and disruptive behavior, and threats and acts of lethal violence toward his family members provide substantial evidence to support a finding of a marked limitation in the domain of interacting and relating to others.[10] Even Dr. Waddell's findings (*see supra* pp. 17-18) equally support the finding of "marked" in this domain, given that "marked" limitation also means a limitation that is "more than moderate"

---

[10]  The age group descriptor for the domain of interacting and relating with others for an individual of Aaron's age is as follows:

> Adolescents (age 12 to attainment of age 18). By the time you reach adolescence, you should be able to initiate and develop friendships with children who are your age and to relate appropriately to other children and adults, both individually and in groups. You should begin to be able to solve conflicts between yourself and peers or family members or adults outside your family. You should recognize that there are different social rules for you and your friends and for acquaintances or adults. You should be able to intelligibly express your feelings, ask for assistance in getting your needs met, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers).

20 C.F.R. § 416.926a(i)(2)(v).

(1:08-CV-02652)

but "less than extreme" and limits at least one daily activity. There can be no dispute that

behavior resulting in expulsion "limits" Aaron's attendance at school.

For the aforementioned reasons, the Court finds that the record supports a finding of

marked limitations in the domains of attending and completing tasks and interacting with

others.[11] [12]

### VI. Conclusion

Benefits may be immediately awarded "only if all essential factual issues have been

resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v.*

*Sec'y of Health & Human Servs.*, 17 F.3d at 176; *see also Abbott v. Sullivan*, 905 F.2d 918, 927

(6th Cir.1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir.1987).

The record adequately establishes Plaintiff Kenneth Taylor's, uncle and legal guardian, on behalf

of his nephew Aaron C. Taylor, entitlement to benefits. *Faucher*, 17 F.3d at 176.

If the ALJ's errors in applying the treating physician rule and conducting a credibility

analysis were the sole frailties in this case, the Court would remand for correction of those

matters. Because, however, substantial evidence demonstrates that Aaron Taylor has marked

---

[11] The Court recognizes that the domain of caring for yourself includes suicidal thoughts and actions, 20 C.F.R. § 416.926a(k)(3)(iv), and that Aaron's suicide attempt may or may not amount to an extreme or marked limitation in that domain. The record does not contain medical opinion evidence following Aaron's suicide attempt that shows the durational nature of this self-injurious behavior. Without such evidence, the Court is reluctant to alter the ALJ's finding regarding the domain of caring for yourself. Also, because the Court has found marked limitations in two domains establishing disability, the Court will not further address the limitation of this domain.

[12] *See infra* Appendix 1, Table Summarizing Findings Supported by Substantial Evidence.

(1:08-CV-02652)

limitations in the domains of (1) attending and completing tasks and (2) interacting with others, Aaron has established a functional equivalency to the Listings.  The Court finds the evidence of disability to be overwhelming  and opposing evidence lacking.  A remand in this matter would merely involve the presentation of cumulative evidence, serve no useful purpose and ensure unnecessary delay.  *Faucher, 17 F.3d at 176*; *see also Felisky v. Bowen, 35 F.3d 1027, 1041 (6th Cir.1994)*; *Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir.1985)*.

Accordingly, the Court reverses the decision of the Commissioner of Social Security and remands the matter for an immediate award of benefits, pursuant to Sentence Four of 42 U.S.C. § 405(g).


IT IS SO ORDERED.


December 31, 2009                                           s/ *Benita Y. Pearson*
Date                                                              United States Magistrate Judge

(1:08-CV-02652)

# Appendix 1

(1:08-CV-02652)

| Disputed Domains of Functioning | ALJ's Findings | Dr. Zwissler's Findings | Dr. Waddell's Findings | Findings Supported by Substantial Evidence |
|---|---|---|---|---|
| **Attending and Completing Tasks** | less than marked | less than marked | marked | marked |
| **Interacting and Relating to Others** | less than marked | less than marked | less than marked | marked |
| **Caring for Yourself** | less than marked | no limitation | less than marked | unaltered |